UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MAX HENRY OOM,

                Petitioner,

v.

JOHN CHRISTIANSEN,

                Respondent.

_____/

Case No. 1:22-cv-83

Honorable Sally J. Berens

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any

procedural imposition on a named defendant." *Id*. at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id*. (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding—the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C.

---

[1]*But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207-09, n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

§ 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

<u>**Discussion**</u>

**I.     Factual allegations**

Petitioner Max Henry Oom is incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan. On December 7, 2017, in Emmet County Circuit Court Case No. 17-004621-FH, Petitioner pleaded guilty to delivery of a controlled substance in violation of Mich. Comp. Laws § 333.7401(2)(b)(i). In exchange for Petitioner's plea, the prosecutor dismissed two additional counts charging the same offense, a charge of obstruction of justice, and a second habitual offender sentence enhancement. On January 23, 2018, the court sentenced Petitioner to a prison term of 6 to 20 years, to be served consecutively to a sentence of 1 year, 4 months to 5 years imposed by the same court for attempted third-degree criminal sexual conduct (CSC-III) in Case No. 17-004525-FH following Petitioner's guilty plea in that case.[2]

---

[2] Petitioner has completely served his CSC-III sentence. He is presently serving the delivery sentence he is challenging by way of this petition. Upon the completion of that sentence, Petitioner will begin serving another sentence with a term of 1 year, 1 month to 20 years for delivery of a controlled substance imposed by the Emmet County Circuit Court in Case No. 18-004709-FH following Petitioner's guilty plea. *See* MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=385246 (last visited Feb. 18, 2022). This Court takes judicial notice of the information provided by a search of the OTIS website with regard to Petitioner. *See, e.g., Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No.

After sentencing, Petitioner challenged the propriety of the sentence, objecting to the court's assignment of points for offense variable 14[3] and objecting to the court's decision to make the sentence consecutive to Petitioner's sentence for the CSC-III conviction. (Pet'r's 2d Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 1-1, PageID.41.) The trial court denied relief. (Emmet Cnty. Cir. Ct. Register of Actions, ECF No. 1-1, PageID.34.)

Petitioner then sought leave to appeal to the Michigan Court of Appeals raising, apparently among other issues, his claim that the trial court erred when assigning 10 points for offense variable 14. The court of appeals initially denied leave to appeal for lack of merit in the grounds presented. *People v. Oom*, No. 346557 (Mich. Ct. App. Jan. 25, 2019), available at https://www.courts. michigan.gov/c/courts/coa/case/346557 (last visited Feb. 18, 2022). Petitioner filed an application for leave to appeal to the Michigan Supreme Court. By order entered September 20, 2019, the supreme court denied leave to appeal as to all issues except one—the assignment of 10 points for offense variable 14. *People v. Oom*, 504 Mich. 964, 932 N.W.2d 789 (Mich. 2019). With regard to that issue, in lieu of granting leave, the court remanded the matter to the Michigan Court of Appeals "as on leave granted." *Id.*

On remand, the court of appeals agreed with Petitioner that the trial court had erred by assessing 10 points for offense variable 14. *People v. Oom*, No. 346557, 2020 WL 5582242, at *3 (Mich. Ct. App. Sept. 17, 2020). The court noted that Petitioner's offense variable points totaled 35 before correction of the error, which resulted in Petitioner having a minimum guidelines range of 72 to 120 months. *Id.* Subtracting the erroneously scored 10 points, however, would reduce

---

1:13-cv-313, 2013 WL 1947249, at *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821–22 n.3 (E.D. Mich. 2004).

[3] Offense variable 14 calls for the assignment of 10 points if "[t]he offender was a leader in a multiple offender situation . . . ."  Mich. Comp. Laws § 777.44(1).

4

Petitioner's offense variable score by enough to change his minimum guidelines range to 57 to 95 months. *Id*. Because the error affected the statutory sentencing guidelines range, the court of appeals vacated Petitioner's judgment of sentence and remanded the matter to the trial court for resentencing. *Id*.

Upon Petitioner's return to the trial court, a new presentence investigation report was prepared. The new report removed the 10-point score for offense variable 14, but increased Petitioner score on offense variable 19 from 10 points to 25 points.[4] The net impact of the scoring changes increased Petitioner's offense variable score by 5 points, but left Petitioner in the same cell on the sentencing grid, with a minimum sentence range of 72 to 120 months. Mich. Comp. Laws § 777.63. The trial court resentenced Petitioner to the same sentence:  6 to 20 years.

Petitioner, with the assistance of counsel, filed an application for leave to appeal to the Michigan Court of Appeals, raising the same issues he raises in his habeas petition. By order entered September 17, 2021, the court of appeals denied Petitioner's application "for lack of merit in the grounds presented." (Mich. Ct. App. Order, ECF No. 1-1, PageID.30.) Petitioner then attempted to file a *pro per* application for leave to appeal to the Michigan Supreme Court raising the same issues he raises in his habeas petition. (Pet'r's Mich. Appl. for Leave to Appeal, ECF No. 1-1, PageID.20–29.) By letter dated November 30, 2021, the Michigan Supreme Court returned Petitioner's application because he filed it late. (Nov. 30, 2021, Corr., ECF No. 1-1, PageID.18.)

On January 26, 2022, Petitioner filed his habeas corpus petition raising three grounds for relief, as follows:

---

[4] Offense variable 19 calls for the assignment of 25 points where the offender has threatened the security of a penal institution or court.  Mich. Comp. Laws § 777.49.  Petitioner reports that the the agent preparing the presentence investigation report relied on fourteen misconduct convictions during Petitioner's incarceration to conclude that Petitioner had threatened the security of a penal institution.  (Pet'r's 2d Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 1-1, PageID.42.)

      I.        Did the trial court err by failing to speak directly to the defendant to advise him that he could be sentenced to consecutive terms?

      II.     Was the trial court's sentence for 6 years consecutive minimum in the MDOC disproportionate, unjustified and unreasonable where the minimum possible sentence was 6 years for this case concurrent with another sentence?

      III.   Was [Offense Variable] 19 incorrectly scored for conduct that occurred while incarcerated on another offense, and applied more than 3 years after the sentencing crime was committed?

(Pet'r's Mich. Ct. App. Appl. for Leave to Appeal., ECF No. 1-1, PageID.40.)

## II.    Exhaustion and procedural default

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present[]" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See id.*. at 844, 848; *Picard v. Connor*, 404 U.S. 270, 275–77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365–66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Fair presentation has a substantive component and a procedural component. With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern. *Picard*, 404 U.S. at

277–78; *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993), overruled on other grounds by *Thompson v. Keohane*, 516 U.S. 99, 111 (1995). With regard to procedure, "[t]he fair presentation requirement is not satisfied when a claim is presented in state court in a procedurally inappropriate manner that renders consideration of its merits unlikely." *Black v. Ashley*, No. 95-6184, 1996 WL 266421, at *1 (6th Cir. May 17, 1996) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)); *see also Long v. Sparkman*, No. 95-5827, 1996 WL 196263, at *2 (6th Cir. Apr. 22, 1996); *Fuller v. McAninch*, No. 95-4312, 1996 WL 469156, at *2 (6th Cir. Aug. 16, 1996).

The district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138–39. "[A] state will no longer be found to have waived the defense of nonexhaustion unless it does so expressly and through counsel." *Rockwell v. Yukins*, 217 F.3d 421, 423–24 (6th Cir. 2000).

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Petitioner has submitted his applications for leave to appeal to both the Michigan Court of Appeals and the Michigan Supreme Court. Those applications reveal that Petitioner raised his habeas grounds to both courts; but he did not "fairly present" them to the Michigan Supreme Court. Petitioner filed his application for leave to appeal to the Michigan Supreme Court "in a procedurally inappropriate manner that render[ed] consideration of its merits unlikely," *Black*, 1996 WL 266421, at *1-2; he filed it late. Therefore, Petitioner has not fairly presented his habeas issues to all levels of the state court system.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). The only avenue that remains for Petitioner to raise his habeas grounds in the state court is a motion for relief from

judgment under Michigan Court Rules 6.500 *et seq*. That procedure, however, does not permit relief where the motion "alleges grounds for relief which were decided against the defendant in a prior appeal . . . ." Mich. Ct. R. 6.508(D)(2).[5] Therefore, the Court concludes that Petitioner has no available state remedy remaining.

If no further state remedy is available to the petitioner, failure to exhaust does not bar the habeas remedy, but the claim is procedurally defaulted. *Rust*, 17 F.3d at 160. When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986).

Although a procedural default may bar relief on this habeas petition, the Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner,

---

[5] There are exceptions to the "decided on prior appeal" rule: if a retroactive change in law undermines the prior decision or if there is new evidence that would make a different result probable on retrial, or when a new claim for relief creates a significant possibility of actual innocence. Mich. Ct. R. 6.508(D)(2).  None of those exceptions is applicable here.  Petitioner does not rely on any retroactive changes in the law or new evidence; and he does not claim he is actually innocent—he just wants a shorter sentence.

whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999). In this case, because this matter is easily resolved on the merits, the Court will proceed to address the merits despite Petitioner's procedural default.

## III.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation

marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise

10

contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

A.      **Trial court's failure to advise Petitioner regarding the potential for a consecutive sentence during the plea hearing**

A valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge brought against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner's claim suggests that his plea is invalid, i.e., it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

The test for determining a guilty plea's validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S.

12

487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267–68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56–57.

Petitioner does not rely on any of this federal constitutional authority in raising his claim. Instead, he relies on Michigan Court Rule 6.302 regarding how the trial court must proceed during the plea hearing to ensure that the plea is accurate, voluntary, and understanding. Petitioner also relies on *People v. Warren*, 505 Mich. 496, 949 N.W.2d 125 (Mich. 2020). In *Warren*, the Michigan Supreme Court held that Michigan Court Rule 6.302 requires a trial court to advise a defendant at the plea hearing that the court possesses discretionary consecutive-sentencing authority and to apprise the defendant as to the potential consequences of that authority for the defendant's sentence. The supreme court did not address whether *due process* required the trial

13

court to advise the defendant of the discretionary authority at the plea hearing, even though that issue was squarely before the court. The Michigan Court of Appeals had expressly concluded that due process did not require the trial court to advise a defendant of the possibility of discretionary consecutive sentencing because that consequence was a collateral, rather than a direct, consequence of the plea. *People v. Warren*, No. 333997, 2018 WL 2269651, at *3 (Mich. Ct. App. May 17, 2018), *rev'd, Warren*, 949 N.W.2d at 125. The Michigan Supreme Court never addressed the requirements of due process because it resolved the issue based upon the requirements of the court rule.

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Petitioner's claim that the trial court violated Michigan Court Rule 6.302 when the court failed to advise Petitioner, during the plea hearing, of the court's discretionary authority to impose a consecutive sentence, is purely a state law claim that is not cognizable on habeas review.

Although the claim as Petitioner has raised it is not cognizable, there might be a parallel due process claim that Petitioner's plea was "unknowing" because Petitioner did not know that the trial court had discretionary authority to impose a consecutive sentence. That claim, however, would fail for two reasons. First, Petitioner never states that he did not know that the trial court

14

had discretionary authority to impose a consecutive sentence. He does not state that counsel failed to advise him that the court had discretionary authority to impose a consecutive sentence. He only states that the trial court did not so advise Petitioner "at the plea hearing." (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 1-1, PageID.41.) Petitioner's failure to claim that he did not know the trial court had discretionary authority to impose a consecutive sentence is not surprising. The Emmet County Circuit Court register of actions indicates that the initial conference regarding this matter made note of the fact that the court had discretionary consecutive sentencing authority.

Second, even if Petitioner did not have knowledge regarding the potential of a consecutive sentence, that potential is not a direct consequence of the plea that must be "known" for a plea to be knowing and voluntary. The Sixth Circuit Court of Appeals, while acknowledging that a guilty plea must be voluntarily entered with a full understanding of the direct consequences of the plea, concluded that "under the great weight of the authority, whether a federal sentence runs consecutive to or concurrent with a state sentence is not considered a direct consequence of the plea." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990). The Sixth Circuit reached the same conclusion in *Hall v. Bradshaw*, 466 F. App'x 472 (6th Cir. 2012), stating that "the fact that the trial court did not expressly inform Hall that his state sentence could be made consecutive to his federal sentence did not render his plea involuntary." *Hall*, 466 F. App'x at 474. The *Hall* court also cited with approval the decision of the Second Circuit in *Wilson v. McGinnis*, 413 F.3d 196, 200 (2d Cir. 2005), where the court concluded that habeas relief was not warranted based on the trial court's failure to inform the defendant that he could receive consecutive state sentences. *Hall*, 466 F. App'x at 474.

For all of these reasons, Petitioner has failed to show that the court of appeals' rejection of his claim as meritless is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B.      A disproportionate and unreasonable sentence

Petitioner next contends that the trial court's consecutive sentence of 6 to 20 years to be served consecutively to the CSC-III sentence was disproportionate and unreasonable under *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d. 1 (Mich. 1990), and *People v. Steanhouse*, 500 Mich. 453, 902 N.W.2d 327 (Mich. 2017). (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 1-1, PageID.43–49.) Again, "a federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson*, 562 U.S. at 5 (2010).

In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9–11; *People v. Babcock*, 469 Mich. 247, 666 N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis. *Id*. at 335–37. In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate.

It is plain that *Milbourn*, and thus *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines

16

and violated the principles of proportionality set forth in [*Milbourn*,] essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus."). Because this Court has no power to intervene on the basis of a perceived error of state law, *see Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41, Petitioner's claims based on *Milbourn* and *Steanhouse* are not cognizable in a habeas corpus action.

The same reasonableness/proportionality principles are not present in the United States Constitution's Eighth Amendment. That is so despite the fact that the *Milbourn* opinion quotes *Weems v. United States*, 217 U.S. 349, 367 (1910): "[I]t is a precept of justice that punishment for the crime should be graduated and proportioned to the offense." *Milbourn*, 461 N.W.2d at 9. But the quote from *Weems* is somewhat misleading. *Weems* was not an Eighth Amendment case.

At issue in *Weems* was not a sentence imposed by a state, or even the United States, but one imposed by the supreme court of the Philippines. Mr. Weems's crime was making two false entries in a wages paid logbook relating to lighthouse services. His punishment for that crime was significant:

> The minimum term of imprisonment is twelve years, and that, therefore, must be imposed for 'perverting the truth' in a single item of a public record, though there be no one injured, though there be no fraud or purpose of it, no gain or desire of it. Twenty years is the maximum imprisonment, and that only can be imposed for the perversion of truth in every item of an officer's accounts, whatever be the time covered and whatever fraud it conceals or tends to conceal. Between these two possible sentences, which seem to have no adaptable relation, or rather in the difference of eight years for the lowest possible offense and the highest possible,

the courts below selected three years to add to the minimum of twelve years and a day for the falsification of two items of expenditure, amounting to the sums of 408 and 204 pesos. And the fine and 'accessories' must be brought into view. The fine was four thousand pesetas,—an excess also over the minimum. The 'accessories' we have already defined. We can now give graphic description of Weems's sentence and of the law under which it was imposed. Let us confine it to the minimum degree of the law, for it is with the law that we are most concerned. Its minimum degree is confinement in a penal institution for twelve years and one day, a chain at the ankle and wrist of the offender, hard and painful labor, no assistance from friend or relative, no marital authority or parental rights or rights of property, no participation even in the family council. These parts of his penalty endure for the term of imprisonment. From other parts there is no intermission. His prison bars and chains are removed, it is true, after twelve years, but he goes from them to a perpetual limitation of his liberty. He is forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, not being able to change his domicil without giving notice to the 'authority immediately in charge of his surveillance,' and without permission in writing. He may not seek, even in other scenes and among other people, to retrieve his fall from rectitude. Even that hope is taken from him, and he is subject to tormenting regulations that, if not so tangible as iron bars and stone walls, oppress as much by their continuity, and deprive of essential liberty. No circumstance of degradation is omitted. It may be that even the cruelty of pain is not omitted. He must bear a chain night and day. He is condemned to painful as well as hard labor. What painful labor may mean we have no exact measure. It must be something more than hard labor. It may be hard labor pressed to the point of pain.

*Weems*, 217 U.S. at 365–66.

The measure of that punishment was not the United States Constitution. In *Weems*, the United States Supreme Court was interpreting the "cruel and unusual" punishment clause of the Bill of Rights of the Philippine islands. Moreover, the "precept of justice" referenced was not one adopted by the United States Supreme Court or by any court of the islands; it was a belief attributed to persons "who have formed their conception of the relation of a state to even its offending citizens from the practice of the American commonwealths . . . ." *Weems*, 217 U.S. at 367.

The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S.

18

63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 30 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Harmelin v. Mich.*, 501 U.S. 957, 960 (1991)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. His sentence does not present the extraordinary case that warrants deeper inquiry into reasonableness and proportionality or that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

Petitioner also makes passing reference to the fact that his sentence was not "individualized." (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 1-1, PageID.47–49.) The concept of an "individualized" sentence has been discussed by the United States Supreme Court, but as a "prevalent modern philosophy of penology," not a constitutional mandate. *Williams v. New York*, 337 U.S. 241, 247 (1949). Even Michigan Supreme Court authority discusses individualized sentencing as a principle of the modern view of sentencing, not a constitutional requirement. *See, e.g., People v. Triplett*, 407 Mich. 510, 287 N.W.2d 165, 166–67 (Mich. 1980); *see also People v. McFarlin*, 389 Mich. 557, 208 N.W.2d 504, 513 (Mich. 1973) ("The modern view of sentencing is that the sentence should be tailored to the particular circumstances of the

case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential.").

Federal authority likewise concludes, with two possible exceptions not applicable here,[6] that individualized sentences are not constitutionally required. *Harmelin*, 501 U.S. at 995 ("Our cases creating and clarifying the 'individualized capital sentencing doctrine' have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties."); *see also Lockett v. Ohio*, 438 U.S. 586, 604–05 (1978) (in a case holding that mitigating factors must be fully considered in death penalty cases, the Court "recognize[d] that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes."). The Sixth Circuit has acknowledged that "there is no constitutional right to individualized sentencing in non-capital cases." *United States v. Odeneal*, 517 F.3d 406, 415 (6th Cir. 2008); *see also United States v. Graham*, 622 F.3d 445, 454 (6th Cir. 2010); *Thomas*, 49 F.3d at 261; *United States v. Gardner*, 931 F.2d 1097, 1099 (6th Cir. 1991); *United States v. Ruffin*, 783 F. App'x 478, 483 (6th Cir. 2019); *Hynes v. Birkett*, 526 F. App'x 515, 522 (6th Cir. 2013); *United States v. Holmes*, 11 F. App'x 408, 409 (6th Cir. 2001); *United States v. Levy*, 904 F.2d 1026, 1035 (6th Cir. 1990). *But see United States v. Corum*, 354 F. App'x 957, 963 (6th Cir. 2009) ("The government and Defendant both raise arguments about whether there is a constitutional right to an individualized sentence for non-capital defendants. It is not fully settled whether there is such a constitutional right, though some precedent in this Circuit may have suggested otherwise.").

---

[6] The two possible exceptions are a sentence of death, and a sentence of life imprisonment without possibility of parole for a juvenile offender—which is like "the death penalty itself." *Miller v. Alabama*, 567 U.S. 460, 470 (2012).

Therefore, any claim that Petitioner was denied an individualized sentence is not cognizable on habeas review.

Petitioner has failed to show that the court of appeals' rejection of the claim that his sentence is disproportionate, unreasonable, and not individualized, is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on that claim.

C.      **Sentence violates the Michigan sentencing guidelines**

Finally, Petitioner complains that the trial court's scoring of offense variable 19 based on behavior completely unrelated to the sentencing offense is "inappropriate" under state law. Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). Thus, this Court is bound by the state appellate court's determination that Petitioner's offense variable scoring challenge was without merit. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that jurists of reason could . . . conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**<u>Conclusion</u>**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated: March 21, 2022                                              /s/ Sally J. Berens
                                                                            SALLY J. BERENS
                                                                            U.S. Magistrate Judge